IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

JOHN ASHLEY HALE                                                                    PLAINTIFF

VS.                                                          CIVIL ACTION NO. 2:06cv245-MTP

STATE OF MISSISSIPPI, ET AL.                                                    DEFENDANTS

**OPINION AND ORDER**

This matter is before the court *sua sponte* for evaluation pursuant to 28 U.S.C. § 1915(e)(2). The plaintiff is proceeding *pro se* and *in forma pauperis* pursuant to 28 U.S.C. § 1915. Having reviewed the complaint and the applicable law and being fully advised in the premises, the court finds that the plaintiff's complaint fails to state a claim upon which relief may be granted. Accordingly, plaintiff's complaint is dismissed with prejudice.

FACTUAL BACKGROUND

Plaintiff John Ashley Hale filed his civil rights Complaint [1] pursuant to 42 U.S.C. § 1983 on October 24, 2006. At the time plaintiff filed his Complaint, he was incarcerated in the South Mississippi Correctional Institution ("SMCI") in Leakesville, Mississippi, serving a seven-year sentence for burglary. Plaintiff named the following defendants in his complaint and amended complaints: Ronald King, Christopher Epps, Mike Hatten, Dr. Zandu, Dr. Arnold, Dr. Trinca, Ms. Moulds, Dr. McCleave, Dr. Woodall, Mark Hale, Wexford Health Services, and John Does.[1] Plaintiff was transferred to the Harrison County Jail in August 2007 [57]. Plaintiff was released from custody on or about September 13, 2007, and has provided the following address to the court: P.O. Box 4098, Biloxi, Mississippi 39531. *See* Notice of Change of Address [85].

---

[1]The following defendants have been terminated and/or dismissed: State of Mississippi, Jim Hood, Margaret Bingham, and Dr. Williams.

In his Complaint, plaintiff asserts claims for denial of adequate medical treatment, denial of proper diet, and violation of the ADA.[2]  Specifically, plaintiff alleges that he received inadequate medical care for his chronic hepatitis C, chronic back pain, and psychiatric conditions.

Plaintiff alleges that Dr. Arnold told him that they do not treat hepatitis C with medication, vitamins or special diets.  However, during his *Spears* hearing, plaintiff testified that after he filed this lawsuit, the doctors "started monitoring it and doing a little bit of treatment.  But they still don't want to do the interferon stuff. . . ." (Tr. 15.)  During his *Spears* hearing, plaintiff testified that the doctors at SMCI had classified him as having "acute" hepatitis, and that he actually had "chronic" hepatitis.  He alleged that this was "maybe negligence or malpractice." (Tr 19.)  He claimed that he should be able to get treatment because it "puts his future health in danger." (Tr. 19.)  He alleges that Dr. Trinca never referred him to an orthopedic doctor or a "hepatologist," despite his requests.

When the court inquired as to the plaintiff's current health during the *Spears* hearing on June 29, 2007, he replied that his liver enzymes were "up and down," but that blood tests would not show it; he testified that a biopsy of his liver would have to be performed to know the condition of his liver, which had not been done. (Tr. 19.)  He further testified that he complained to Mr. Epps, the "policy-maker," and to Mr. King about the denial of adequate medical treatment, but they did not take any action. (Tr. 16-17.)

In his Amended Complaint [16], plaintiff alleges that Dr. Woodall and Dr. McCleave denied him adequate medical treatment by denying him adequate pain medication, adequate care for his chronic hepatitis C, and his "psychiatric conditions."

---

[2]Plaintiff's Complaint [1] also alleged claims for denial of proper credit for time served and for being incarcerated under an illegal sentence.  Such claims were dismissed by Order [8] dated December 12, 2006, because they were habeas in nature.

Regarding his "psychiatric conditions," plaintiff alleges that Dr. Zandu prescribed him Paxil, even though he told Dr. Zandu that it made him suicidal. Plaintiff also complains that Dr. Williams' treatment for his psychiatric conditions was "cursory," and that he disagreed with the medication Dr. Williams prescribed to him.

Plaintiff also disagreed with the medication that Dr. Arnold prescribed him for his back pain. He alleges that the medicine the doctors were prescribing him were destroying his liver. Plaintiff alleges that he was ultimately prescribed his requested medication, Ultram, for his back pain by Dr. McGrew in June 2006.

Plaintiff also alleges that he was denied a proper diet for his chronic hepatitis C by Dr. Arnold and Ms. Moulds. He claims that he should have been receiving a high-protein diet tray and vitamin supplements. He claims that he lost 36 pounds since arriving at SMCI. When asked how the denial of a "proper diet tray" has harmed the plaintiff, he replied that it "puts [his] future health in danger." (Tr. 21.) Plaintiff admitted that this claim was based on a fear of what might happen. (Tr. 27.)

In his Amended Complaint [16], plaintiff also alleges claims for violations of the ADA against defendants Mr. Epps, Mr. Hatten, and Mr. King.[3] Plaintiff claims he was discriminated and retaliated against. Specifically, he claims that he was denied access to the satellite and regional facilities, was denied the ability to work in the prison kitchen, and was denied the ability to go to school, because he was classified as "medical class III" and/or a "psychiatric C." *See* Amended Complaint [16] and Tr. 33-34.

Plaintiff sought injunctive relief to satisfy his medical needs, which was denied by Order [28] dated June 22, 2007. Regarding his ADA claims, plaintiff seeks to have the MDOC Restitution Center in Hinds County brought into compliance with Title II of the ADA, and to not

---

[3]Plaintiff's Motion to Amend/Correct Complaint [16] was denied to the extent he sought to assert ADA claims against additional defendants. *See* Order [33].

3

prevent him from participating in MDOC programs because of his disability. Plaintiff also seeks compensatory damages against each defendant in their individual and official capacities in the amount of $250,000, punitive damages against each defendant in the amount of $10,000,000, and all filing fees and attorney fees.

## ANALYSIS

Because the plaintiff is proceeding *in forma pauperis* in this action, his complaint is subject to *sua sponte* dismissal under 28 U.S.C. § 1915(e)(2), which mandates dismissal "at any time" if the court determines that the action "fails to state a claim on which relief may be granted" or "is frivolous or malicious." *See also Ali v. Higgs,* 892 F.2d 438, 440 (5th Cir. 1990) (recognizing the court's authority "to test the proceeding" and deeming appropriate *sua sponte* evaluation of the merit of the asserted claim). "A complaint is frivolous if it lacks an arguable basis in law or in fact." *Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995). This court is "vested with especially broad discretion in making the determination of whether an IFP proceeding is frivolous." *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).

The plaintiff's claims are before the court pursuant to 42 U.S.C. § 1983. However, Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981). Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *White*, 660 F.2d at 683 (*quoting* 42 U.S.C. § 1983).

### Denial of Adequate Medical Care/Denial of Proper Diet

"Prison officials violate the constitutional proscription against cruel and unusual

4

punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. Appx. 963, 964 (5th Cir. 2004) (*citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (*quoting Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).  The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A prison official may not be held liable under this standard pursuant to Section 1983 unless the plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 838.

Negligent conduct by prison officials does not rise to the level of a constitutional violation.  *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986).  The plaintiff is not entitled to the "best" medical treatment available.  *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, No. CIVA 403CV141WHVJCS, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

Plaintiff's allegations regarding the denial of adequate medical treatment for his back pain, hepatitis C, and "psychiatric conditions" simply do not rise to the level of deliberate indifference.  At best, plaintiff disagrees with the treatment he received for these conditions, which does not constitute a constitutional violation.  *See Norton*, 122 F.3d at 292.

Regarding his back pain, plaintiff alleges that he disagreed with the medication that he

5

was prescribed, claiming it "leads to liver toxicity." (Tr. 22.) He claimed that the doctors continued to prescribe the medication, even though he informed them about the future liver toxicity. Plaintiff alleges that he was ultimately prescribed his preferred medication, Ultram, by Dr. McGrew. Plaintiff's disagreement with the medical treatment he received does not amount to deliberate indifference in violation of the Eighth Amendment. *See Norton*, 122 F.3d at 292.

Regarding treatment for his hepatitis C, plaintiff alleged that he was being treated for the disease, but was not being properly treated. For example, he claims that the doctors were not performing the "interferon" treatment, and that Dr. Arnold failed to order him a special diet tray.[4] Plaintiff testified that his liver enzymes were "up and down," and that the inadequate treatment for his hepatitis was putting his "future health at risk." (Tr. 19.) Plaintiff, who admittedly has no medical training, claimed that this would not be shown by a blood test, but only by a liver biopsy. During his *Spears* hearing, plaintiff testified that the basis for his claim for the denial of adequate medical treatment for his hepatitis C was that the treatment "puts [his] future health in danger, at risk." (Tr. 13.)

As previously stated, neither plaintiff's disagreement with the medical treatment he received, nor negligence or malpractice by the medical defendants constitute deliberate indifference in violation of the Eighth Amendment. *See Norton*, 122 F.3d at 292; *Daniels*, 474 U.S. 333-34; *see also Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. Appx. 963, 964-65 (5th Cir. 2004) (affirming Section 1915A(b)(1) dismissal of plaintiff's complaint, holding that the denial of interferon therapy for plaintiff's hepatitis C did not amount to deliberate indifference to a serious medical need); *McMahon*, 583 F.2d at 174 (stating that the plaintiff has no constitutional right to the "best" medical treatment available). Further, plaintiff's claim that

---

[4]However, plaintiff testified during his *Spears* hearing that Dr. Trinca ordered him a special diet tray after Dr. Arnold left SMCI. (Tr. 21.)

6

the medical defendants improperly diagnosed him with "acute" hepatitis, instead of "chronic" hepatitis, also fails to rise to the level of a constitutional violation. *See Domino*, 239 F.3d at 756 (stating that "incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference").

Finally, regarding the treatment for his "psychiatric conditions," plaintiff alleged that he was treated and prescribed medication, but that he disagreed with the medication he was prescribed. He also complained about the length of his doctor visits, claiming they were "cursory." The record reflects that plaintiff was seen by several doctors for his "psychiatric conditions," and was prescribed medication. The fact that plaintiff disagreed with the treatment and/or medication he was prescribed does not rise to the level of deliberate indifference in violation of the Eighth Amendment. *See Norton*, 122 F.3d at 292; *Daniels*, 474 U.S. 333-34.

Denial of Proper Diet

Plaintiff alleges that he was denied a proper diet tray by Ms. Moulds. He alleges that he should have received a special diet tray consisting of high-protein due to his hepatitis C. In his Amended Complaint [16], plaintiff stated that he wished to voluntarily dismiss Ms. Moulds from this case because she had recently started giving him adequate diet trays. *See* Amended Complaint [16] at ¶ V. 6. However, during his *Spears* hearing, he informed the court that he wanted Ms. Moulds to remain in the action to ensure that she continued to provide him with proper diet trays. (Tr. 8-10.)

In order to establish an Eighth Amendment claim, "the prisoner must demonstrate, *inter alia*, an objective component of conditions so serious as to deprive him of the minimal measure of life's necessities, as when denied some basic human need." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999). Pursuant to the Eighth Amendment, inmates must be provided with "well-balanced meal[s], containing sufficient nutritional value to preserve health." *Berry*, 192 F.3d at

7

507 (*quoting Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986)) (internal quotation marks omitted). The Constitution requires that inmates be provided with "reasonably adequate" food. *Berry*, 192 F.3d at 507 (*quoting Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996)). However, "[t]he deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.'" *Berry*, 192 F.3d at 507 (*quoting Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998)). "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation." *Id.*

Plaintiff's allegations against Ms. Moulds do not constitute cruel and unusual punishment in violation of the Eighth Amendment, especially in light of the fact that Ms. Moulds was ultimately providing plaintiff with the diet trays he requested while he was still incarcerated in SMCI. Plaintiff does not allege that Ms. Moulds deprived him of reasonably adequate food. Accordingly, these allegations fail to state a claim upon which relief may be granted. Further, plaintiff's claims against Ms. Moulds are moot, since he testified during his *Spears* hearing that he only wished to keep Ms. Moulds in the action to ensure that she continue to provide him with the proper diet trays, and plaintiff is no longer incarcerated in SMCI, or any other prison. *See Criollo v. Wilson*, 76 Fed. Appx. 576, 578 (5th Cir. 2003) (holding that plaintiff's claims for declaratory and injunctive relief alleged in his civil rights complaint were moot since he had been released from custody).

Violation of the ADA

In his Amended Complaint [16], plaintiff alleges claims for violations of the ADA against Mr. Epps, Mr. Hatten, and Mr. King.[5] Plaintiff claims he was discriminated and retaliated

---

[5] As previously stated, plaintiff sought leave to assert ADA claims against additional defendants, but the court only allowed the amendment as to Mr. Epps, Mr. King, and Mr. Hatten. *See* Order [33].

against. Specifically, he claims that he was denied access to the satellite and regional facilities, was denied the ability to work in the prison kitchen, and was denied the ability to go to school, because he was classified as "medical class III" and/or a "psychiatric C." *See* Amended Complaint [16] and Tr. 33-34.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 28 U.S.C. § 12132. In order to establish a cause of action under Title II of the ADA, plaintiff must establish:

> (1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits or discrimination is by reason of his disability.

*Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004).

The plaintiff cannot recover from the defendants in their individual capacities under the ADA. *See Gonzales v. City of Corpus Christi*, No. C.A. C-05-280, 2005 WL 3058168, at *7 (5th Cir. Nov. 9, 2005) (holding that Title II of the ADA does not contemplate holding officers liable in their individual capacities); *Shabazz v. Texas Youth Comm'n*, 300 F. Supp. 2d 467, 473-74 (N.D. Tex. 2003). Accordingly, plaintiff's claims against Mr. Epps, Mr. King, and Mr. Hatten in their individual capacities must be dismissed.

Further, to the extent plaintiff seeks injunctive or declaratory relief for his ADA claims, such relief is denied as moot, as plaintiff is no longer incarcerated at SMCI, or any other facility. *See Hickman v. State of Missouri*, 144 F.3d 1141, 1142 (8th Cir. 1998) (holding that because plaintiffs had been released and were no longer in custody, their

9

request for declaratory relief under the ADA was moot); *see also Criollo v. Wilson*, 76 Fed. Appx. 576, 578 (5th Cir. 2003) (holding that plaintiff's claims for declaratory and injunctive relief alleged in his civil rights complaint were moot since he had been released from custody).

Finally, regarding plaintiff's ADA claim against Mr. Epps, Mr. King, and Mr. Hatten in their official capacities, "a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted). The Eleventh Amendment "generally precludes actions against state officers in their official capacity, since such suits are considered suits against the state." *Mississippi Surplus Lines Ass'n v. Mississippi*, 384 F. Supp. 2d 982, 984 (S.D. Miss. 2005) (internal quotations and citations omitted). However, Congress clearly intended to abrogate the States' Eleventh Amendment immunity in passing Title II of the ADA. *See* 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment . . . from an action in Federal or State court of competent jurisdiction for a violation of this chapter."); *Tennessee v. Lane*, 541 U.S. 509, 518 (2004). Thus, the question remains, "whether Congress had the power to give effect to its intent." *Lane*, 541 U.S. at 518.

The Supreme Court recently held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity"). *See United States v. Georgia*, 546 U.S. 151, 159 (2006). Therefore, the court must determine whether plaintiff's ADA claims actually violate the Fourteenth Amendment.

The Fourteenth Amendment guarantees the constitutional rights of due process and equal protection. *See Myers v. Johnson*, 76 F.3d 1330, 1333 (5th Cir. 1996).

Additionally, the Due Process Clause of the Fourteenth Amendment incorporates the Eighth Amendment's guarantee against cruel and unusual punishment. *See Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463 (1947).

As stated above, plaintiff's ADA claims are as follows: that he was denied access to the satellite and regional facilities, that he was denied the ability to work in the prison kitchen, and that he was denied the ability to go to school because he was classified as "medical class III" and/or a "psychiatric C." *See* Amended Complaint [16] and Tr. 33-34. "[P]risoners have no constitutionally protected liberty or property interests per se in their prison job assignments." *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir. 1995) (*citing Jackson v. Cain*, 864 F.2d 1235, 1250 (5th Cir. 1989)). Likewise, a prisoner does not have a constitutional right to educational or vocational training. *Beck v. Lynaugh*, 842 F.2d 769, 762 (5th Cir. 1988); *see also Scheanette v. Riggins*, No. 9:05cv34, 2006 WL 722212, at *9 (E.D. Tex. March 15, 2006) (holding that plaintiff's claims that his denial of television and educational programs due to his "death row" status failed to constitute a valid ADA claim; prisoners have no constitutional right to television or educational programs). Finally, a prisoner does not enjoy a constitutional right to be incarcerated in a particular prison or facility. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Steward v. Kelly*, No. 06CV1-P-B, 2006 WL 3825236, at *4 (N.D. Miss. Dec. 27, 2006); *Ready v. Fleming*, No. CIV. A. 4:02-CV-056-Y, 2002 WL 1610584, at *3 (N.D. Tex. July 19, 2002).

Because the plaintiff does not enjoy a constitutional right to educational training in prison, to be incarcerated in a particular facility, or to work in the prison kitchen, his allegations that he was prevented from the foregoing due to his classification of "medical class III" and/or "psychiatric C" do not violate the Fourteenth Amendment of the

Constitution. Further, the alleged conduct of the defendants does not violate the Equal Protection Clause because plaintiff has failed to allege, must less establish, that others similarly situated (i.e., other "medical class III" and/or "psychiatric C" inmates) were treated differently than he was treated. *See Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). Accordingly, assuming *arguendo* that plaintiff would be able to establish a prima facie case under Title II of the ADA, plaintiff has failed to show that the defendants' alleged conduct *actually* violates the Fourteenth Amendment.

However, in *United States v. Georgia*, *supra*, the Supreme Court left open the issue of whether Congress's purported abrogation of sovereign immunity is valid for conduct that violates Title II of the ADA, but does not violate the Fourteenth Amendment. *See Georgia*, 546 U.S. at 159 (stating that on remand, the lower court must determine "insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid"). In order to answer this question, the court must employ the three steps set forth in the *City of Boerne v. Flores*, 521 U.S. 507 (1997), to determine whether the purported abrogation is a valid exercise of Congress's prophylactic reach under Section 5 of the Fourteenth Amendment. *See City of Boerne v. Flores*, 521 U.S. 507 (1997); *Tennessee v. Lane*, 541 U.S. 509, 518-34 (2004).

In evaluating Title II under the *City of Boerne* test, the court must apply the following three steps: (1) "identify the constitutional right or rights that Congress sought to enforce when it enacted Title II"; (2) whether Congress enacted Title II in response to a history and pattern of unconstitutional conduct; and (3) to determine whether Title II is a "congruent and proportional" response in the context of state prisons. *See Lane*, 541 U.S. at 522-33; *City of Boerne*, 521 U.S. at 529-37.

12

Applying step one, Title II clearly implicates the Eighth Amendment and the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment. *See, e.g., Georgia*, 546 U.S. at 160-63 (Stevens, J. and Ginsburg, J., concurring). Applying the second step, the enactment of Title II represents Congress's response to a history of unconstitutional conduct. *See Lane,* 541 U.S. at 522-33*; Constantine v. Rectors & Visitors of George Mason Univ.* 411 F.3d 474, 487 (4th Cir. 2005) ("After *Lane,* it is settled that Title II was enacted in response to a pattern of unconstitutional disability discrimination by States and nonstate government entities with respect to the provision of public services.").

In evaluating step three, the court recognizes that "[w]hile Congress must have a wide berth in devising appropriate remedial and preventative measures for unconstitutional measures, those measures may not work a 'substantive change in the governing law.'" *Lane*, 541 U.S. at 520. Because Title II of the ADA could impose potential liability for the denial of a prisoner's educational programs, recreational activities, or other programs or activities, although prisoners enjoy no constitutional right to same, the court concludes that the requirements of Title II surpass the rights secured by the Constitution. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 373 (2001) (stating that the accommodation duty required by the ADA "far exceeds what is constitutionally required in that it makes unlawful a range of alternative responses that would be reasonable but would fall short of imposing an 'undue burden' upon the employer . . . [and] makes it the employer's duty to prove that it would suffer such a burden, instead of requiring (as the Constitution does) that the complaining party negate reasonable bases for the employer's decision"); *Chase v. Baskerville*, 508 F. Supp. 2d 492, 504 (E.D. Va. 2007) ("Title II imposes an affirmative accommodation obligation in

13

the administration of state prisons that far exceeds what the Equal Protection Clause requires.").

Accordingly, the court concludes that Title II is not a "congruent and proportional" response in the context of state prisons.  *See Chase*, 508 F. Supp. 2d at 506 (*quoting City of Boerne*, 521 U.S. at 532) (holding that "in the prison context, Title II fails the third step of the *City of Boerne* test because it 'is so out of proportion to a supposed remedial or preventive object that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior'").  Therefore, sovereign immunity is only abrogated to the extent the alleged conduct *actually* violates the Fourteenth Amendment. *See Georgia*, 546 U.S. at 159.  As a result, the plaintiff's ADA claims against the defendants in their official capacities for monetary damages must also be dismissed.

## CONCLUSION

For the reasons stated above, the plaintiff's claims are dismissed with prejudice.  Further, the following motions are denied as moot: Motion to Dismiss [42] by Wexford Health Services; Motions to Amend/Correct filed by plaintiff [45][51]; Motion for Default Judgment [54] as to Dr. Zandu, Dr. Trinca, Ms. Moulds, Mark Hale, Dr. McCleave and Dr. Woodall; and Motion to Dismiss [58] by Dr. Arnold.

A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED AND ADJUDGED this, the 9th day of November, 2007.

                                             s/ Michael T. Parker
                                             United States Magistrate Judge